IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| DA'QUAN E., | * |
| Plaintiff, | * |
| v. | * Civil No. TMD 20-1091 |
| ANDREW M. SAUL, | * |
| Commissioner of Social Security, | * |
| Defendant. | * |

***********

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Plaintiff Da'Quan E. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 11).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 10) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 2000. R. at 20. On February 9, 2016, Plaintiff's guardian protectively filed an application for SSI on Plaintiff's behalf when he was under the age of 18, which the Commissioner denied initially and on reconsideration. R. at 15, 41-42. Upon request, Administrative Law Judge ("ALJ") Theodore W. Grippo held a hearing on January 22, 2019, where Plaintiff did not appear, but his attorney was present, and a vocational expert ("VE") testified. R. at 39-54. The ALJ thereafter found on April 29, 2019, that Plaintiff was not disabled before attaining the age of 18. R. at 20-29. In so finding, the ALJ found that Plaintiff (1) had not engaged in substantial, gainful activity since the filing date of the application; and (2) had the severe impairments of attention deficit hyperactivity disorder and specific learning disabilities in reading, written expression, and mathematics; but (3) did not have an impairment or a combination of impairments meeting, medically equaling, or functionally equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 20-29. The ALJ found that Plaintiff's impairments did not functionally equal a listed impairment because he did not have an impairment or combination of impairments that resulted in either "marked" limitations in two out of six domains of functioning or "extreme" limitation in one domain of functioning. R. at 29. Rather, the ALJ found that he had less than marked limitations in acquiring and using information, in attending and completing tasks, in interacting and relating with others, in moving about and manipulating objects, and in the ability to care for himself. R. at 24-29. The ALJ found that Plaintiff had no limitation in health and physical well-being, however. R. at 29.

The ALJ also found that Plaintiff was not disabled from the day Plaintiff attained the age of 18 through the date of the ALJ's decision. R. at 29-33. In so finding, the ALJ found that,

since attaining age 18, Plaintiff (1) had not developed any new impairment or impairments and (2) continued to have a severe impairment or combination of impairments; but (3) did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. at 29-31.  In comparing the severity of Plaintiff's mental impairments to the listed impairments, the ALJ found that Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace since attaining the age of 18.  R. at 30-31.

The ALJ then found that, since attaining the age of 18, Plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember and carry out simple instructions without fast pace or strict production quotas; with only occasional, superficial interaction with others; where multi-tasking is not required; and where changes in routine are simple.

R. at 31.  In light of this RFC and the VE's testimony, the ALJ found that, since attaining age 18, Plaintiff could work as an industrial cleaner, laundry worker, or transportation cleaner.  R at 32-33.  The ALJ thus found that Plaintiff was not disabled from the day Plaintiff attained the age of 18 through April 29, 2019.  R. at 33-34.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on April 28, 2020, a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Disability Determinations and Burden of Proof**

**A.      Child SSI**

An individual under the age of 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. To determine whether a child has a disability within the meaning of the Social Security Act, the Commissioner follows a three-step sequential evaluation process. 20 C.F.R. §§ 416.924, 416.926a. The first step is a determination whether the child is engaged in substantial gainful activity. *Id.* § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step. The second step involves a determination whether a claimant's impairment or combination of impairments is severe, i.e., more than a slight abnormality that causes no more than minimal functional limitations. *Id.* § 416.924(c). If not, benefits are denied; if so, the evaluation continues. The third step involves a determination whether the child has an impairment or impairments that meet, medically equal, or functionally equal in severity a listed impairment. *Id.* § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

"A child's functioning is determined by looking at six broad areas, or 'domains,' in an attempt to evaluate 'all of what a child can or cannot do.'" *Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 527 (D. Md. 2010) (quoting 20 C.F.R. § 416.926a(b)(1)). In the domain of "acquiring and using information," the Commissioner considers how well a child acquires or learns information, and how well the child uses the learned information. 20 C.F.R.

§ 416.926a(g). In the domain of "attending and completing tasks," the Commissioner considers how well a child is able to focus and maintain attention and how well the child begins, carries through, and finishes activities. *Id.* § 416.926a(h). In the domain of "interacting and relating with others," the Commissioner considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of others' possessions. *Id.* § 416.926a(i). In the domain of "moving about and manipulating objects," relating to a child's gross and fine motor skills, the Commissioner considers how the child moves his or her body from one place to another and how the child moves and manipulates things. *Id.* § 416.926a(j). In the domain of "caring for yourself," the Commissioner considers how well a child maintains a healthy emotional and physical state, including how well the child gets his or her physical and emotional wants and needs met in appropriate ways, how the child copes with stress and changes in the environment, and whether the child takes care of his or her own health, possessions, and living area. *Id.* § 416.926a(k).

Impairments "functionally equal listing-level severity when they produce an 'extreme' limitation in a child applicant's functioning in one domain or 'marked' limitations in functioning in two domains." *Woodhouse*, 696 F. Supp. 2d at 527 (citing 20 C.F.R. § 416.926a(d)). A "marked" limitation in a domain is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation in a domain is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). "It is

the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

**B.     Adult SSI**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 416.920(c), 416.922(a).[2]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable

---

[2] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[3] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-12, ECF No. 10-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 6. In

---

[3] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

particular, Plaintiff contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* Plaintiff also argues that the ALJ failed to explain how "the evidence upon which he relied to determine that a limitation to understanding, remembering, and carrying out simple [instructions], without fast pace or strict production quotas, adequately addressed [Plaintiff's] deficiencies in concentration, persistence, or pace" and failed to explain "what he meant by the term 'without fast pace or strict production quotas.'" *Id.* at 7-8. Plaintiff finally argues that the ALJ failed to explain "how he determined that an individual with moderate limitations in concentration, persistence, or pace would be capable of maintaining[] concentration, attention, and pace for an entire workday." *Id.* at 10. For the following reasons, the Court remands this case for further proceedings.

SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

(per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* The Fourth Circuit, however, "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Rather, when "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in

11

concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (quoting *Winschel*, 631 F.3d at 1180).

Here, the limitations in the ALJ's hypothetical to the VE and in the corresponding RFC assessment to "simple work" or to understanding, remembering, and carrying out simple instructions, "with only occasional, superficial interaction with others; where multi-tasking is not required; and where changes in routine are simple" (R. at 31; *see* R. at 48), do not account for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) ("'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence."); *Mascio*, 780 F.3d at 638; *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Dawn W. v. Berryhill*, No. 17 CV 8998, 2019 WL 2327656, at *6 (N.D. Ill. May 31, 2019) (concluding that ALJ's RFC assessment precluding, *inter alia*, conditions requiring multi-tasking did not adequately capture claimant's moderate limitations in concentration, persistence, or maintaining pace).

Further, even if the ALJ meant to account for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace by limiting him to work "without fast pace or strict production quotas," "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (per curiam);

*see Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) ("[T]he ALJ's reference to 'flexible pace' is insufficient to account for [the claimant's] difficulties maintaining focus and performing activities within a schedule, because the reference excludes only production-pace employment. Without more, the VE cannot determine whether someone with [the claimant's] limitations could maintain the proposed pace or what the proposed pace even is." (citation omitted)). In any event, in limiting Plaintiff to work "without fast pace or strict production quotas," the ALJ "did not give [the Court] enough information to understand what those terms mean." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019). "That makes it difficult, if not impossible, for [the Court] to assess whether their inclusion in [Plaintiff's] RFC is supported by substantial evidence." *Id.* "Without further explanation, [the Court] simply cannot tell whether the RFC finding— particularly the portion restricting [Plaintiff] to jobs that do not require [fast pace or strict production quotas]—properly accounts for [Plaintiff's] moderate limitations in concentration, persistence, and pace." *Id.* at 312 n.5; *see Perry v. Berryhill*, 765 F. App'x 869, 872-73 (4th Cir. 2019) (holding that ALJ's failure to explain meaning of "non-production oriented work setting" precluded meaningful review of ALJ's conclusions); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("[T]his Court cannot determine whether the ALJ's findings were supported by substantial evidence without an explanation of the terms 'production pace or strict production quotas.'"). "[E]ven if 'the VE's testimony does not evince any confusion about the terms of the hypothetical, the Court has an independent duty to determine if the ALJ supported [his] findings with substantial evidence.'" *Taishika C. v. Saul*, Civil No. DLB-19-1994, 2020 WL 2994487, at *3 (D. Md. June 4, 2020) (quoting *Geneva W.*, 2019 WL 3254533, at *3). Remand is warranted "to allow the ALJ to clarify the RFC assessment and hypothetical to the VE, in order to establish that the VE's

testimony constitutes substantial evidence supporting the ALJ's conclusion." *Geneva W.*, 2019 WL 3254533, at *3. "On remand, the ALJ will need to establish for how long, and under what conditions, [Plaintiff] is able 'to focus [his] attention on work activities and stay on task at a sustained rate.'" *Thomas*, 916 F.3d at 312 n.5 (quoting 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00E(3)).

The ALJ also failed to explain how, despite Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace, he could be productive or remain on task for more than 80% of an eight-hour workday. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding because, *inter alia*, ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various functional areas and ALJ's finding that claimant would not be off task more than 10% of workday). "Notably, it appears the ALJ disregarded testimony from the VE about a person with limitations in concentration, persistence, and pace." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). The VE testified that being off task 20% of the day would preclude an individual's employment (R. at 49). This response, however, is "not reflected in the ALJ's decision. Because the ALJ did not include [Plaintiff's] difficulties with concentration, persistence, and pace in the hypothetical he *did* consider, the decision cannot stand." *Id.*

In short, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas*, 916 F.3d at 311. The ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *Lewis*

*v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017).  Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further proceedings.  *Thomas*, 916 F.3d at 311 (citing *Woods*, 888 F.3d at 694).

Because the Court remands this case on other grounds, the Court need not address Plaintiff's remaining arguments.  In any event, the ALJ also should address these other issues raised by Plaintiff.  *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues.").

## V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 11) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 10) is **GRANTED**.  Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order will issue.

Date: March 26, 2021

/s/
Thomas M. DiGirolamo
United States Magistrate Judge